IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| VELEDA GHEE, | |
| | |
| Plaintiff, | |
| | |
| v. | Case No. |
| | |
| WASTE INDUSTRIES OF MARYLAND, LLC, d/b/a GFL WASTE INDUSTRIES, and d/b/a GFL ENVIRONMENTAL, a Foreign Limited Liability Corporation; and WASTE INDUSTRIES, LLC, d/b/a GFL WASTE INDUSTRIES, a Foreign Limited Liability Corporation, | |
| | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, VELEDA GHEE brings this action and complaint for damages and demand for jury trial against Defendants, WASTE INDUSTRIES OF MARYLAND, LLC, d/b/a GFL WASTE INDUSTRIES, and d/b/a GFL ENVIRONMENTAL, a Foreign Limited Liability Corporation ("WoM"), and WASTE INDUSTRIES, LLC, d/b/a GFL WASTE INDUSTRIES, a Foreign Limited Liability Corporation ("WI") (collectively "GFL Waste Industries" or "Defendants"), and in support thereof, alleges as follows:

## JURISDICTION & VENUE

1.    The Court has original jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") pursuant to 28 U.S.C. § 1331. *See* 42 U.S.C. § 2000e *et seq.*

2.     The Court has supplemental jurisdiction over Plaintiff's claims under Maryland Code, State Government §20-601 *et seq*., ("Title 20") pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiff's Title VII claims that they form part of the same case or controversy.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in Harford County, Maryland, which is located within the of the Maryland District Court, Baltimore Division.

4.     Plaintiff Veleda Ghee is a woman who, at the time of her termination from employment with GFL Waste Industries, was subjected to sexual harassment, discrimination, retaliation, and a hostile work environment, and was forced to resign from her position due to Defendants' failure to remedy the hostile work environment.

## PARTIES

5.     At all times material hereto, Plaintiff was a resident of Harford County, Maryland.

6.     At all times material to this action, WoM, was and continues to be, a Foreign Limited Liability Company, engaging in business throughout Maryland and doing business in this judicial district. WoM can be served with process upon its registered agent The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

7.     At all times material to this action, WI, was and continues to be a Foreign Limited Liability Company, engaging in business throughout Maryland and doing business in this judicial district. WI can be served with process upon its registered agent The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

8.     Further, at all times material to this action, WoM, and WI were, and continue to be engaged in business in Maryland, doing business in Harford County, Maryland, and operating under the corporate umbrella of GFL Waste Industries.

9.    Defendants are each, and collectively, an employer as defined under Title VII and Title 20.

10.    At all relevant times, Plaintiff is protected by Title VII and Title 20 because:

   a.    Plaintiff is a female;

   b.    Plaintiff is a member of a protected class by virtue of her gender;

   c.    At all relevant times, Defendants were Plaintiff's employers and subject to the provisions applicable to employers contained in Title VII and Title 20;

   d.    Plaintiff was an "employee" of Defendants within the meaning of Title VII and Title 20;

   e.    Plaintiff suffered from sexual harassment, hostile work environment, discrimination and retaliation;

   f.    Plaintiff engaged in a protected activity; for example, Plaintiff objected to Defendants' sexual harassment and hostile work environment; and

   g.    Nothing was done to rectify the reported sexual harassment and hostile work environment; and

   h.    Instead, Plaintiff was retaliated against, and forced to terminate her employment with Defendants.

## SATISFACTION OF CONDITIONS PRECEDENT

11.    On December 06, 2020, Plaintiff dual filed her Charge of Discrimination with the Equal Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR"), alleging that Defendants discriminated and retaliated against her because of her gender, in violation of Title VII and Title 20. See attached hereto as **Exhibit "A"**.

12.    On May 25, 2023, the EEOC issued Plaintiff her right to sue letter. See attached hereto as **Exhibit "B".**

13.     Plaintiff files this action within the applicable period of limitations.

14.     All conditions precedent have been satisfied and/or waived.

## FACTUAL BACKGROUND

15.     GFL Waste Industries is the leading North American provider of diversified environmental solutions. Acting as GFL Waste Industries, Defendants provide collection, hauling, sorting, transfer, and disposal of yard waste, recyclables, and solid waste to residential, commercial, and industrial customers throughout Maryland.

16.     Plaintiff worked for GFL Waste Industries as a Recycle Truck Diver from about October 30, 2020, until April 9, 2021.

17.     Shortly after Plaintiff's employment began with GFL Waste Industries in November 2020, she was subjected to sex-based harassment from her assigned helper.

18.     Specifically, on multiple occasions, the helper urinated in Plaintiff's view. The helper would expose his penis and posterior while urinating, despite Plaintiff's request that he not do so.

19.     On November 28, 2020, Plaintiff reported this behavior to her supervisors, Jason Rice, Matthew Hackrotte (recycling supervisors), and Kenny Roberts (lead driver). Further advising that the helper's behavior had progressively worsened with the helper urinating, and exposing himself, closer and closer to Plaintiff while on jobs, making her feel uncomfortable.

20.     In response to Plaintiff, the supervisors stated they would "speak" with the helper.

21.     Notwithstanding Plaintiff's supervisors promise to speak with the helper, on December 2, 2020, the helper urinated immediately behind Plaintiff, in the hopper of the truck.

22.      At the end of Plaintiff's shift, she reported this additional incident to her supervisor.

4

23.    The helper was not sent home or instructed not to return to work until after an investigation was completed. Rather, Plaintiff was made to work an additional shift with that helper on December 3, 2020.

24.    On December 3, 2020, the helper again urinated in front of Plaintiff.

25.    Plaintiff reported this incident, providing evidence of her claims.

26.    Defendants purported to "investigate" but failed to conduct a proper investigation into Plaintiff's claims.

27.    At the conclusion of Defendants' "investigation," on December 4, 2020, Defendants removed <u>Plaintiff</u> from the truck she had been driving with the helper.

28.    The helper who had exposed himself was allowed to keep working on the same truck, and continued to work for Defendants.

29.    Plaintiff's newly assigned truck was littered with her new helper's ("Helper #2") Playboy magazines.

30.    Plaintiff reported this conduct, and provided proof to her supervisor, Jason Rice.

31.    In addition to Plaintiff's complaint regarding the Playboy magazines, Plaintiff further informed Defendants that Helper #2 was also urinating in public, within her view.

32.    Upon information and belief, Helper #2 was not disciplined for the abovementioned actions.

33.    On December 7, 2020, Plaintiff received her first call from Jasmine Jackson in Human Resources ("HR").

34.    Ms. Jackson failed to request any information from Plaintiff related to her complaints.

35.    Defendants failed to take any action to remedy the reported behavior.

36.     On December 26, 2020, Plaintiff reported that Helper #2 urinated while on the back of the truck near a customer's home.

37.     However, Defendants took no corrective action as to Helper #2.

38.     Instead, due to hostility to Plaintiff for making protected complaints, without any investigation, Defendants dismissed Plaintiff's complaint out of hand, determining, without investigation, that the helper had not urinated while on the truck.

39.     Although he denied that he urinated, Helper # 2 admitted that, within Plaintiff's view, he had unbuttoned his pants and touched his genitals "to adjust". However, no corrective action was taken.

40.     At no point during Defendants' "investigation" into Plaintiff's complaint about the helper did Defendants reach out to Plaintiff to discuss her claims.

41.     Rather, the only communication Defendants had with Plaintiff pertaining to the "investigation," were to the effect that additional reports would cause her credibility to be questioned, and create more problems for her in the workplace.

42.     Plaintiff was made the target of hostility in the workplace due to her complaints.

43.     For example, Plaintiff walked-in on at least two (2) conversations in which a supervisor, Kenny Roberts, was singling Plaintiff out by telling the helpers (all male) that they had to observe certain rules only when working with "her."

44.     Defendants' helpers were aware to whom the term "her" referred because Plaintiff was the only female driver.

45.     This had the effect of discouraging helpers from working with Plaintiff, as there was a separate set of rules they had to observe, only when working with her, even though the

conduct Plaintiff reported violated established Company rules, and did not require her to be singled out in this way.

46.     Prior to making her protected complaints, Plaintiff had an established, consistent, assigned helper. After her protected complaint Plaintiff's helper assignment rotated, and Plaintiff did not have a consistent helper.

47.     When helpers did not show up, or refused to work with Plaintiff, they were not disciplined.

48.     As a result, Plaintiff was often left without a helper after making her protected complaints.

49.     Defendants also engaged in promoting targeted hostility toward Plaintiff based on her protected complaints.

50.     For example, on January 20, 2021, Plaintiff heard Mr. Roberts speaking to a group of helpers. One of the helpers invited Plaintiff to join the conversation, stating words to the effect of: 'You may as well come in, because he is talking about you.'  Upon Plaintiff's arrival, she heard Mr. Roberts saying, "she will report you," "she will take pictures," "she will call HR on you," and "she will try to get you fired."

51.     In response to Mr. Roberts, one helper stated words to the effect of 'well, if she's on with me, dick will be swinging.'

52.     That helper was not disciplined as a result of the statement.

53.     On March 25, 2021, Plaintiff arrived at work at 4:30 a.m. and waited for her helper. Her helper did not arrive.

54.     At 7:30 a.m., Mr. Heckrotte told Plaintiff to dump her truck and come back, because her helper was late.

55.     Defendants had previously announced that anyone who did not finish his/her route would be penalized by having to work on Saturday.

56.     Because her helper did not timely arrive, and Plaintiff was concerned that she would be penalized with Saturday work.

57.     Plaintiff returned around 9:00 a.m. However, her helper still hadn't arrived.

58.     Plaintiff knew that if she had not complained and had continued to allow herself to be subjected to male employees exposing themselves and urinating in her presence, she would have had helpers to work with, as the male drivers did, so that she could perform her work.

59.     Plaintiff knew that despite her many complaints, Defendants took no action to make the environment less hostile, and instead encouraged a more hostile environment.

60.     Plaintiff knew that Defendants did not even reach out to her to investigate any of her complaints.

61.     Plaintiff has been told that making more complaints would make her work-life more difficult.

62.     Visibly upset, Plaintiff went to clock out.

63.     Mr. Heckrotte asked her what was wrong, and she burst into tears and told him that she wished she had not complained, because of the retribution she faced for her report, and that she couldn't bear the hostility of the work environment.

64.     Mr. Heckrotte told Plaintiff she could clock out, and, in tears, Plaintiff clocked out and left for the day.

65.     On Monday, March 29, 2021, while still employed with Defendants, Plaintiff called to inquire about Defendants' Employee Assistance Program for hostile work environment and

harassment. On this call, Plaintiff requested time off. Ms. Jackson advised Plaintiff that she would be given 30 days of leave without pay.

66.    In addition, Ms. Jackson stated that while Plaintiff was on leave, she would investigate Plaintiff's claims and would send someone to the worksite to make the workplace better for Plaintiff.

67.    In the following weeks, no one from GFL Waste Industries contacted Plaintiff to investigate her complaints – even to conduct an interview.

68.    Plaintiff is aware  that no investigation was done at the worksite, either.

69.    Plaintiff was also aware that the helper who did not show up on March 25, 2021, was not disciplined.

70.    Realizing Defendants were not actually going to investigate her claims, Plaintiff knew that Defendants were taking no steps to remedy a hostile work environment she had reported for months, and had no choice but to give her notice of resignation.

71.    Plaintiff gave two weeks' notice, in the hopes that this might spur some action toward investigating her complaints. However, Defendants maintained their apathetic course and conducted no investigation at that time.

72.    Throughout Plaintiff's employment, Defendants, through their employees, targeted her with a multitude of hostile, offensive, unwelcomed, and inappropriate actions.

73.    Defendants' harassing and retaliatory behavior was pervasive and occurred on a regular basis. The examples contained herein are illustrative, not exhaustive.

## COUNT I - DISCRIMINATION/HARASSMENT IN VIOLATION OF TITLE VII
## AND TITLE 20
## (SEXUAL HARRASSMENT)

74.     Plaintiff re-alleges and readopts the allegations contained in paragraphs 1-73 as if fully set forth herein.

75.     Defendants, through their employees and agents, created an intimidating, hostile, and offensive working environment by subjecting Plaintiff to unwelcome sexual conduct because of her sex.

76.     Defendants' sexual harassment, by and through its agents and employees, violated Plaintiff's rights to be free from harassment and discrimination because of her sex under Title VII and Title 20.

77.     The conduct of Defendants and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

78.     The conduct of Defendants was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendants, to deter it, and others, from such conduct in the future.

79.     Defendants' conduct which caused harm to Plaintiff, as described here, was, at a minimum, negligent.

80.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k) and Md. R. Civ. P. Cir. Ct. 2-703.

## COUNT II - DISCRIMINATION IN VIOLATION OF
## TITLE VII AND TITLE 20
## (SEX DISCRIMINATION)

81.    Plaintiff re-alleges and readopts the allegations contained in paragraphs 1-73 as if fully set forth herein.

82.    Discrimination on the basis of sex is a violation under Title VII and Title 20.

83.    Plaintiff is a female truck driver in a predominantly male industry.

84.    Defendants discriminated against Plaintiff on the basis of her sex. Defendants singled Plaintiff out for differential treatment, creating hostility towards her from her fellow male employees.

85.    Plaintiff was also discriminated against because some of the unlawful conduct to which she was subjected was directed toward her because she is a woman.

86.    The acts of Defendants, by and through its agents and employees, violated Plaintiff's rights to be free from discrimination on the basis of her sex under Title VII and Title 20.

87.    The conduct of Defendants and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

88.    The conduct of Defendants was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendants, to deter it, and others, from such conduct in the future.

89.    Defendants' conduct which caused harm to Plaintiff, as described here, was, at a minimum, negligent.

90.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k) and Md. R. Civ. P. Cir. Ct. 2-703.

**COUNT III**
**RETALIATION**
**TITLE VII AND TITLE 20**

91.     Plaintiff re-alleges and readopts the allegations contained in paragraphs 1-73 as if fully set forth herein.

92.     Plaintiff engaged in a protected activity, and objected to the sexual harassment taken against her.

93.     Beginning shortly after her initial complaint about sexual harassment, and continuing through her forced resignation, Plaintiff was subjected to retaliation, which includes retaliatory hostile work environment, and other further harassment by Defendants because she complained of unlawful acts of sexual harassment and discrimination in violation of Title VII and Title 20.

94.     Defendants failed to effectively remedy the situation and condoned, or supported or allowed the harassment and discrimination to continue.

95.     Defendants took adverse employment actions against Plaintiff, including but not limited to retaliation; public humiliation; removing Plaintiff from her truck and her route; telling Plaintiff that her complaints would damage her career; creating a different set of enforcement of ruled for Plaintiff as opposed to other male drivers; and requiring Plaintiff to complete her job duties without the assistance provided to male drivers; these, and other retaliatory actions forced the resignation of Plaintiff's employment.

96.     Defendants threatened Plaintiff for complaining, suggesting that further complaints would damage her career and her work environment.

97.    The discrimination, sexual harassment, and hostile work environment, as more particularly alleged, *supra*, violated Plaintiff's rights against retaliation under Title VII and Title 20.

98.    Defendants' offensive conduct, refusal to provide a remedy to Plaintiff, and retaliatory actions were willful, deliberate, and intentional.

99.    At a minimum, Defendants' offensive conduct, refusal to provide a remedy to Plaintiff, and retaliatory actions were negligent.

100.    The injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

101.    At a minimum, the injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and negligently caused by Defendants.

102.    As a result, Plaintiff was forced to resign from her position because her working conditions became so difficult and unpleasant by Defendants' conduct that a reasonable person would have felt compelled to resign.

103.    Plaintiff's protected activity was a significant factor in the hostile work environment.

104.    This retaliation and retaliatory harassment would not have occurred had Plaintiff not engaged in protected activity pursuant to Title VII.

105.    As a direct and proximate result of the Defendants' violation of Title VII Title 20, Plaintiff suffered economic damages including but not limited to, compensatory and actual damages including loss of wages, loss of benefits, back pay, front pay, and other expenses.

106.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

107.     As a direct, natural, proximate and foreseeable result of Defendants' actions, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

108.     The conduct of Defendants was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff, as to entitle her to an award of exemplary/punitive damages against Defendants, to deter them, and others, from such conduct in the future.

109.     Plaintiff has no plain, adequate, or complete remedy at law for the Defendants' actions, which have caused, and continue to cause, irreparable harm.

110.     Plaintiff is entitled, pursuant to 42 U.S.C. § 2000e-5(k), and Md. R. Civ. P. Cir. Ct. 2-703, to recover her attorneys' fees and litigation expenses.

## COUNT IV –
## HOSTILE WORK ENVIRONMENT
## TITLE VII AND TITLE 20

111.     Plaintiff re-alleges and readopts the allegations contained in paragraphs 1-73 as if fully set forth herein.

112.     Defendants' conduct as described herein was, at a minimum, negligent.

113.     Defendants' conduct as described herein had the purpose or effect of substantially interfering with Plaintiff's employment, and created an intimidating, hostile or offensive employment environment.

114.    Plaintiff was continually subjected to unwelcome sexual conduct, discrimination, harassment and/or retaliation by Defendants, through their employees.

115.    The acts of Defendants' employees had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

116.    Defendants had both actual and constructive notice that their employees created a hostile work environment for Plaintiff.

117.    Despite having notice of the conduct by Defendants' employees towards Plaintiff, Defendants failed to investigate and to take prompt, effective, and appropriate action to protect Plaintiff from the discrimination and harassment by Defendants' employees, in violation of Title VII and Title 20.

118.    As a direct and proximate result of Defendants' unlawful actions against Plaintiff, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment and the physical effects associated therewith, and will so suffer in the future.

119.    As a further direct and proximate result of Defendants' failure to remedy a hostile work environment, in violation of Title VII and Title 20, Plaintiff has been placed in financial distress and has suffered a loss of earnings, due to the forced resignation/constructive discharge of employment, as well as other economic and non-economic damages.

120.    Plaintiff is entitled, pursuant to 42 U.S.C. § 2000e-5(k), and Md. R. Civ. P. Cir. Ct. 2-703, to recover her attorneys' fees and litigation expenses.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial,

together with interest, cost of suit, attorneys' fees, and all such other relief as the court deems just and proper which include:

a.    entry of judgment for Plaintiff and against Defendants for the violations of law alleged herein;

b.    entry of an order requiring Defendants to require comprehensive training for all employees regarding harassment on the basis of sex, and retaliation.

c.    Entry of an order requiring that the Defendants retain an outside consulting firm to undertake an analysis of gender bias within GFL Waste Industries;

d.    Entry of an order requiring Defendants to analyze and revise their procedures for addressing employee grievances regarding sex, gender, and retaliation in order to make the process more transparent and more fair to employees;

e.    award Plaintiff compensatory damages, including but not limited to damages for lost compensation; emotional distress, humiliation, embarrassment and injury to reputation;

f.    award Plaintiff punitive damages;

g.    award Plaintiff reasonable attorneys' fees and costs incurred in this matter, pursuant to, *inter alia,* Title VII and Md. R. Civ. P. Cir. Ct. 2-703, as well as all available pre- and post-judgment interest; and

h.    any and all other relief in law or equity which this Court deems just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 21st day of August, 2023.

/s/ *George G. Triantis*
**GEORGE G. TRIANTIS, ESQ.**
Bar No.: 21254
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Facsimile: 813-257-0572
Email: GTriantis@forthepeople.com

**Angeli Murthy, Esq.**
(*pro hac vice application forthcoming*)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd. Suite 4000
Plantation, FL 33324
Telephone: 954-327-5369
Facsimile: 954-327-3016
Email: amurthy@forthepeople.com

*Trial Counsel for Plaintiff*